**UNITED STATES of America, Appellee,**

v.

**James Allen CAIN, Appellant.**

**No. 79–1802.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 17, 1980.

Decided March 14, 1980.

Douglas E. Kludt, Bergren & Duffy, Fort Pierre, S. D., for appellant.

John J. Ulrich, Asst. U. S. Atty., Sioux Falls, S. D. (argued) and Terry L. Pechota, U. S. Atty., Sioux Falls, S. D., on brief for appellee.

Before GIBSON, Senior Circuit Judge, and ROSS and HENLEY, Circuit Judges.

PER CURIAM.

Appellant, James Allen Cain, hereinafter called defendant, an Indian, was convicted in the United States District Court for the District of South Dakota (The Honorable Donald J. Porter, District Judge) of the crime of arson on the Lower Brule Indian Reservation in South Dakota. He was charged and convicted of having

burned down the C–W Bar in Lower Brule, which establishment belonged to another Indian.[1] The defendant was sentenced to imprisonment for a term of four years and six months. He appeals.

For reversal defendant contends that the evidence was insufficient to sustain the verdict, that the district court erred in refusing to give a proffered instruction dealing with eyewitness identification, and that the district court erred in overruling his motion for a new trial on the ground of newly discovered evidence.

We are satisfied that the motion for a new trial was without merit, and we will not discuss that assignment of error further.

■ As to the sufficiency of the evidence, the government relied on the eyewitness identification of the defendant by Rena Bad Horse as the man who set fire to the C–W Bar on the night of June 22, 1978. That testimony was corroborated to some extent by the testimony of the sister of the witness, Lena Bad Horse, and by an admission that the defendant made later to a witness identified as Hollow Horn Bear.

In passing on the question, of the sufficiency of the evidence to sustain the verdict, we, of course, view the body of evidence in the case in the light most favorable to the government. Were the government relying here solely on the testimony of the Bad Horse girls, we would seriously doubt the sufficiency of that testimony to sustain the verdict. However, their testimony was strongly corroborated by the testimony of another Indian identified as Calvin Frederick Hollow Horn Bear.

In December, 1978 Hollow Horn Bear was confined as a federal prisoner in the Hughes County Jail in Pierre, South Dakota, and he occupied for a time the same cell as did the defendant. Naturally, the two men discussed their respective cases. At this point we quote the pertinent parts of the testimony of Hollow Horn Bear.

Q  Did you ask the Defendant why he was in jail?

A  Yes.

Q  What was his response?

A  Arson.

Q  Did the Defendant volunteer any other statements at that time?

A  Just talked about what he did.

Q  What did he say?

A  Well, he said he was in for arson and the only person that could identify him was a Bad Horse girl.

Q  What did you ask him?

A  I said which one, Rena or Velma?

Q  You asked him which one?

A  Which Bad Horse girl.

Q  What did he say; which names did you give him?

A  Velma or Rena.

Q  What did he say?

A  The youngest one.

Q  What did you tell him?

A  That's Rena Bad Horse.

Q  Did he say, identify her as to any other, as to people she associated with?

A  Yes. He said the one that hangs out with Wally.

Q  You told him that was who?

A  Rena.

Q  What did he say he did?

A  Well, he said, the only one that could identify him was Rena, when he started the fire.

1. Where an Indian by means of arson destroys the property of another Indian within the "Indian country," the offense is covered by the Indian major crimes statute, 18 U.S.C. § 1153 (1978). 18 U.S.C. § 81 (1969) provides that a person is guilty of arson if, within the special maritime or territorial jurisdiction of the United States, he willfully and maliciously sets fire to or burns or attempts to set fire to or burn any building or structure or other types of property.

Where human life is not endangered, the punishment for arson is a fine of not more than $1,000.00 or imprisonment for not more than five years, or both. If the arson imperils human life the prescribed punishment is a fine of not more than $5,000.00 or imprisonment for not more than twenty years, or both.

There is no question that the Lower Brule Indian Reservation is an area within the special territorial jurisdiction of the United States.

Q  What did he say she could do?

A  That he could get sent up.

Q  Where would that be?

A  I don't know.

In view of this corroborating testimony, we are satisfied that the evidence was sufficient to sustain the verdict.

■  This brings us to a consideration of the only serious question in the case, namely, the refusal of the district judge to give a requested instruction relating to the identification of a defendant by an eyewitness. The requested instruction (Defendant's Request No. 6) was based on Devitt & Blackmar, Federal Jury Practice and Instructions § 15.19. In pertinent part the Devitt & Blackmar Instruction is as follows:

> Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

> In appraising the identification testimony of a witness, you should consider the following:

> .  .  .  .  .

> If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

> .  .  .  .  .

> [(3) You may take into account any occasions in which the witness failed to make an identification of defendant, or made an identification that was inconsistent with his identification at trial.]

> (4) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

> I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty.

This is the so-called *Telfaire* instruction derived from *United States v. Telfaire*, 152 U.S.App.D.C. 146, 469 F.2d 552 (D.C. Cir. 1972). *See also United States v. Barber*, 442 F.2d 517, 528 (3d Cir. 1971), and *United States v. Edward*, 439 F.2d 150 (3d Cir. 1971).

In the instant case the district judge told the jury that it must be satisfied from the evidence and beyond a reasonable doubt that the defendant was the person who set fire to the C–W Bar, but the judge did not elaborate, and what he had to say did not amount to a *Telfaire* instruction.

In a case in which reliability of eyewitness identification of a defendant presents a serious question we have approved the giving of a *Telfaire* instruction, if requested, although a defendant may not be entitled to have used the exact language that appears in Devitt & Blackmar; and, indeed, we have held that where the government's case rests solely on questionable eyewitness identification, it is reversible error for a trial court to refuse to instruct the jury along *Telfaire* lines. *United States v. Greene*, 591 F.2d 471, 474–77 (8th Cir. 1979). *See also Durns v. United States*, 562 F.2d 542 (8th Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977); *United States v. Dodge*, 538 F.2d 770, 783–84 (8th Cir. 1976).

As far as this case is concerned, we think that the trial judge should have given the defendant's Requested Instruction No. 6 or an equivalent instruction. But, in view of the fact that the identification of the defendant by Rena Bad Horse was strongly

corroborated by the testimony of Hollow Horn Bear, set out above, we think that this case is not governed by *United States v. Greene, supra,* and we are convinced that the trial court did not err prejudicially in refusing to give the proffered instruction.

Affirmed.