**STATE of North Dakota, Plaintiff and Appellee,**

v.

**John W. FORSLAND, Defendant and Appellant.**

**Cr. No. 840.**

Supreme Court of North Dakota.

Nov. 24, 1982.

James Twomey, Asst. State's Atty., Fargo, for plaintiff and appellee.

Kraemer, Beauchene & Associates, Fargo, for defendant and appellant; argued by Steven D. Mottinger, Fargo.

SAND, Justice.

John W. Forsland appealed from a judgment of conviction on charges of sexual assault (NDCC § 12.1–20–07) and indecent exposure (NDCC § 12.1–20–12.1), claiming that the court improperly admitted certain evidence, and that the evidence was insufficient to justify conviction.

At about 7:20 a.m. on 2 January 1982, a female pharmacist at St. Luke's Hospital in Fargo, after completing a night shift, crossed the street from the hospital and entered a parking ramp where her car was parked on the second level. When she reached the second level, she saw a young man with dark, scraggly hair, wearing jeans and a nylon-type ski jacket, walking slowly.

She entered her car, started the engine, and began backing out slowly, when the man opened her car door, got part way into the car, grabbed her in the crotch area, and exposed himself to her. She sounded the car horn and he ran off. She said that the man's face was within inches of her face for perhaps two minutes, and that she could identify him.

Pursuant to a motion, the defendant was not seated with defense counsel at trial, but was seated in the spectator area of the courtroom. At the trial the complaining witness could not identify Forsland, who was then wearing a mustache. However, she identified two other people sitting in the court room as the man who attacked her. Another St. Luke's Hospital employee who arrived at work about 7 a.m. on 2 January 1982, testified that she encountered and observed a man at the parking ramp for about five seconds who fit the description given by the complaining witness: i.e., 20–30 years old, dark scraggly hair, no glasses, no unusual facial features, wearing jeans and a beige-brown ski jacket. In court she identified Forsland as the man she observed. Yet another witness testified seeing a man two weeks later at the parking ramp from about one-quarter of a block away fitting the description given by the complaining witness and reported this to police, which resulted in Forsland's arrest. That witness identified the defense counsel as the man he saw.

The State did not offer any evidence regarding a pretrial identification—photographic or otherwise.

Forsland's argument is that, in the light of the complainant's inability to identify him, the misidentification by another witness, and the other identification evidence in the case, it was error to admit testimony concerning his plea of guilty to a previous charge of indecent exposure, and it was error to admit testimony regarding his subsequent appearance two weeks later at the "scene of the crime."

At the bench trial, over the defendant's objection, the prosecution introduced evidence that approximately two months before the January 2 incident at the parking

ramp, Forsland was arrested for and pled guilty to committing the offense of indecent exposure at the same location. The prosecutor also introduced evidence concerning Forsland's appearance at the parking ramp about two weeks after the January 2 incident. Forsland did not object to this later testimony but has argued on appeal that it was error to admit that evidence also. The defendant contended that the trial court erred in denying his motion for judgment of acquittal made at the close of the State's case, as permitted by Rule 29, North Dakota Rules of Criminal Procedure.

Rule 52(b), NDRCrimP, permits this court to notice obvious errors or defects affecting substantial rights even though they were not brought to the attention of the trial court. See *State v. Bartkowski*, 290 N.W.2d 218 (N.D.1980). The clerk of court docket entry shows defendant waived a jury trial and was tried to the court.

In this case, whether we apply the *Schuh v. Allery*, 210 N.W.2d 96 (N.D.1973) doctrine wholly or in a limited[1] manner, we must nevertheless resolve which evidence received by the court may be used, if any, in determining the guilt or innocence of the defendant, and also if the evidence permitted to be used is sufficient to justify a conviction. In this respect we should not be misled by the term "admission of evidence," as that term is frequently used in a civil bench trial.

The term "admission of evidence" takes on its full and true meaning from the context in which it is used. In a bench trial, the expression "admission of evidence" refers to the receipt of the evidence in the record as distinguished from using it to arrive at the decision. Thus, in a bench trial evidence may be "admitted," but may not be used by the court in arriving at its decision. However, the term as used in a jury trial means and includes both that the evidence may be received and used, unless the admission of the evidence is for a limited purpose, which generally will be stated at the time a ruling on the evidence is made. The Rules of Evidence avoid this problem by using the expression "admissible to prove," or "admissible for the purpose of proving," etc. Be that as it may, our ultimate responsibility in the instant case is to decide if the prior plea of guilty[2] and the testimony of the witness that he saw the defendant at the scene of the crime two weeks later may be used by the court in determining the guilt or innocence of the defendant.

The State, in support of its position that such evidence may be used, relied upon Rule 404(b), NDREv. Rule 404, NDREv, provides as follows:

"(a) Character Evidence Generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

1. In civil cases, findings of fact, whether contained in a memorandum opinion, findings of fact, or conclusions of law, aid the appellate court in determining what evidence the trial court used or relied upon in reaching its decision. In criminal cases, the court only finds the defendant guilty or not guilty. If the court, in announcing its decision in a criminal bench trial were to state what evidence it did not use, it would improve the problem with which we are presently confronted. This, however, does not eliminate any prejudices that may result from evidence that was presented to the court and made part of the record but not eligible for use.

2. The trial judge (magistrate) was the state's attorney when the defendant was prosecuted and pled guilty to a similar offense about two months before the incident of 2 January 1982. The record does not disclose if the judge (magistrate) gave defendant an opportunity to raise any objection to her sitting on the case. Either when the defendant waived the jury trial or upon becoming aware of the assignment of the case to the judge who presided in this case, or both, a self recusal may have been appropriate under the circumstances of this case. Recently, in *State v. Rummel*, 326 N.W.2d 64 (N.D.1982), we concluded that the defendant's right to a fair and impartial jury was infringed because nine jurors sat on at least one other jury trial for the same offense charged (DWI) after being selected as jurors for the defendant's trial, but prior to the commencement of his trial. In a bench trial the judge acts as the jury.

(1) Character of Accused. Except as otherwise provided by statute, evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) Character of Victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) Character of Witness. Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. However, it may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

This Rule, however, must be read and construed along with the other provisions of Rule 404 and the other Rules of Evidence.

In *State v. Stevens,* a jury case, 238 N.W.2d 251, 257 (N.D.1975), this Court said:

"It is a general rule that evidence of prior acts or crimes cannot be received unless it is substantially relevant for some purpose other than to show a probability that a defendant committed a crime charged because he is a man of criminal character. McCormick on Evidence, 2d Ed., § 190; *State v. Schlittenhardt,* 147 N.W.2d 118 (N.D.1966).

The Court specifically noted there is an exception to the Rule which has been accepted in other courts and has been recognized by this Court in *State v. Flath,* 61 N.D. 342, 237 N.W. 792 (1931), pertaining to motive, intent, and lack of accident or mistake. The court then observed that "The mere invocation of an exception to a rule does not end inquiry, however. It only begins it." *State v. Stevens, supra.* The court stated that before such evidence may be considered at all, there must be proof of commission of the crime charged. In this respect, it approved the second paragraph of North Dakota Jury Instruction 1316, which stated the applicable law:

"Evidence of other acts of a like nature cannot be considered for any purpose, unless you first find that other evidence in the case, standing alone, establishes beyond a reasonable doubt that the defendant committed the particular act charged in the Information."

The *Stevens* opinion briefly reviewed the previous ruling of this Court in *Flath, supra,* which cited and relied upon *State v. Gummer,* 51 N.D. 445, 200 N.W. 20 (1924), before concluding that the evidence of other crimes may not be admitted or used to show that the defendant acted in conformity therewith or to show a probability that the defendant committed the crime for which he was charged. The *Stevens* court then stated:

"In the final analysis, the question before the court, trial or appellate, is one of balancing the aims of full disclosure and fairness to the defendant where they are in conflict. The basic question is fundamental fairness. *State v. Flath,* 61 N.D. 342, 237 N.W. 792 (1931). As McCormick says, the problem is not one of pigeonholing, but of balancing, of discretion rather than following a rule." *State v. Stevens, supra,* at 257–258.

The court then quoted extensively from McCormick on Evidence, 2d Ed. § 190, page 453–454. See also, Annot., 88 ALR3d 8 (1978) pertaining to remoteness in the time of other similar offenses committed by accused as affecting admissibility of evidence thereof in prosecution for sex offense. This article makes the general statement that according to the traditional rule, in a criminal prosecution evidence that shows or tends to show the commission by the accused of other crimes or offenses, although of the same nature as the crime charged, ordinarily is incompetent and inadmissible.

■ Upon a careful analysis, we conclude that Rule 404(b), NDREv, is basically a formal recitation of the prior existing rule

of law of this state and that the formal adoption of Rule 404(b) did not substantially alter or modify the rule of law discussed and approved in *Stevens*. Even though *Stevens* involved a jury case, nevertheless the rule of law discussed and approved as to what evidence may be used as distinguished from merely received or entered in the record in a bench trial, is important and controlling. The *Stevens* rule established what evidence may not be used in determining the guilt or innocence of the defendant.

■ Rule 404(b) was adopted from the Federal Rules of Evidence, and as such the construction and interpretation placed upon the rule by the federal authorities are entitled to appreciable weight, but our research did not produce any case law directly on point. However, statements and discussions in Weinstein on Evidence [3] are not inconsistent with the rule stated in *Stevens*.

In *State v. Phelps*, 297 N.W.2d 769 (N.D. 1980), decided after the Rules of Evidence were adopted (including Rule 404), this Court in effect adhered to the case law enunciated in *Stevens, supra.* This Court said:

"In *State v. Stevens*, 238 N.W.2d 251 (N.D.1975), we enunciated criteria to be considered whenever subdivision (b) of Rule 404, N.D.R.Ev., is invoked. A stricter showing of relevancy is required to prove identity or the doing of the criminal act by the accused than when it is offered to prove knowledge, intent, or state of mind. There must be clear and convincing evidence of prior similar acts. Evidence of prior wrongs may not be considered unless proof exists of commission of the crime charged. [This obviously means proof that the defendant committed the crime charged.] Finally, the court must balance the aims of full disclosure and fairness to the defendant when they are in conflict. Thus, even if the proffered evidence of other crimes has probative value in proving something other than the defendant's propensity to

**3.** "Central to the Anglo-American system of criminal law is the concept that the accused must be protected against forcible inculpation—either through his words or proof of his past misdeeds. Closely analogous is the familiar rule that a man is innocent until proven guilty. One form of protection is constitutional—the privilege against self-incrimination. A second—which may not be constitutionally guaranteed but which is accepted by all American jurisdictions—is the exclusionary rule embodied in Rule 404; it renders inadmissible, as part of the prosecution's evidence in chief, character evidence offered solely to show the accused's propensity to commit the crime with which he is charged." 2 Weinstein's Evidence ¶ 404[04] pp. 404–25 and 404–26.

. . . . .

"The fact that a defendant committed another crime may be relevant to a wide variety of consequential facts, material propositions, depending on the kind of circumstantial steps with which it is used. Only one series of evidential hypotheses is forbidden in criminal cases by Rule 404: a man who commits a crime probably has a defect of character; a man with such a defect of character is more likely than men generally to have committed the act in question. Rule 404(b) which admits evidence of other crimes, wrongs or acts for purposes other than to show that a person acted in conformity with his character is not an exception to Rule 404(a) since Rule 404(a) does not apply when criminal propensity is not used circumstantially as the basis for inferring an act. See ¶ 404[02], *supra.* Rule 404(b) is redundant; it appears as a rule, although the result would have been the same in its absence, to alert the reader to this avenue of admitting evidence of other criminal acts, and to detail the most usual instances in which admissibility may be achieved." 2 Weinstein's Evidence, ¶ 404[08], pp. 404–44 and 404–45.

"Rule 404(b) is a specialized rule of relevancy. Accordingly, as with any determination pursuant to Rule 401, counsel must be prepared to 1) identify the consequential fact to which the proffered evidence of other crimes, wrongs or acts is directed (see ¶ 404[09] ), 2) prove the other crimes, wrongs or acts (see ¶ 404[10] ), and 3) articulate precisely the evidential hypothesis by which the consequential fact may be inferred from the proffered evidence (see ¶ 404[11] ). Evidence which passes muster up to this point must, in addition, satisfy the balancing test imposed by Rule 403 which requires the probative value of the other crimes evidence to outweigh the harmful consequences that might flow from its admission. . . ." 2 Weinstein's Evidence, ¶ 404[08], p. 404–49.

If the foregoing procedure, as found in the paragraph immediately above, is followed, many problems or difficulties will be eliminated or substantially reduced.

commit the crime charged, the evidence is not admitted as a matter of course." *State v. Phelps, supra* at 772–773.

"Rule 404(b), of the Federal Rules of Evidence, makes inadmissible, as tending to prove that a person committed a specified crime or wrong, evidence that he committed a crime or civil wrong on another occasion . . . ." Jack B. Weinstein, *Basic Problems of State and Federal Evidence* (5th Ed.1976). at page 191.

Volume 2, Weinstein's Evidence, by Weinstein and Berger (1981), ¶ 404[05], states:

"Rule 404 restates the common law rule which bars the prosecution from the circumstantial use of bad character in the first instance, but allows the accused to introduce evidence of good character . . . ."

In Volume 41, Iowa Law Review (1956), page 333, entitled *Other Vices, Other Crimes,* the use or non-use of prior offenses is discussed, and the author makes some interesting statements:

"[The] possibility is high that the jury will convict on the basis of character alone, and prejudice dictates the decisions of the triers of fact.

"Yet courts have lost all feeling for tradition and the meaning of prejudice when applying rules of exclusion in prosecutions for sex offenses. A strong line of authorities today holds that evidence of other crimes is admissible for the purpose of showing a degenerate disposition, a lustful disposition, or an inclination to commit sexual offenses."

The cases relied upon by the author are not all of recent vintage. The article continues:

"When deciding the issue of guilt or innocence in sex cases, where prejudice has reached its loftiest peak, our courts have been most liberal in announcing and fostering a nebulous exception, offering scant attention to inherent possibilities of prejudice. Just when protection is most needed, the rules collapse." *Id.* at 334.

With this we will specifically consider the evidence challenged. The evidence in question was not necessary to lay the foundation for the offense charged, as would be the case of proving a charge of driving while his license was suspended. In that case the prosecution would first have to establish that the driver's license was suspended in order to establish that the defendant drove while his license was suspended. See, *State v. Bergeron,* 326 N.W.2d 684 (N.D.1982).

■ Taking into account the fact that the complaining witness at the trial could not, or rather did not, identify the defendant but identified two other persons who allegedly assaulted her, and in applying Rule 404(b) and the rule in *Stevens,* as reaffirmed in *Phelps,* we conclude that the evidence pertaining to the admission of the defendant's prior plea of guilty on a similar offense could not be used in determining whether or not the defendant was guilty or innocent of the crime charged.

■ We reach the same conclusion regarding the presence of the defendant at the scene of the crime two weeks after the incident in which the defendant is charged. We cannot overlook the fact that the description used by the witness came from the complaining witness, who could not identify the defendant at trial. Consequently this evidence is suspect and is not entitled to any serious consideration. It rests on a weak foundation. In addition, the mere evidence of being present at the scene of the crime at a later date is not probative evidence that the individual committed the crime, particularly where the scene of the crime is not a place of isolation but is a place frequented by the public generally. This evidence merely creates a suspicion which is inadequate to satisfy the standard of "beyond a reasonable doubt," and does not connect the defendant with the commission of the crime. See *State v. McMorrow,* 286 N.W.2d 284 (N.D.1979). The only evidence linking the defendant to the commission of the crime charged is the testimony of a witness who, a short time before the incident, saw a man that fit the description given by the complaining witness victim). But this evidence is insufficient to justify a

connection. It may create a suspicion but, as stated earlier, that is not enough.

As to the use of evidence for one purpose but not another, we recently concluded in *State v. Allery*, 322 N.W.2d 228 (N.D.1982), that the defendant did not receive a fair trial because the jury was not instructed that the admission of certain hearsay testimony should have been considered only for impeachment purposes and not for substantive or primary evidence. In that case, eliminating the evidence which could be used for impeachment purposes only, left the case in a weak, prejudicial position and we reversed and remanded because of the totality of circumstances. The same, out of necessity, applies here.

Considering, without weighing, only the admissible circumstantial evidence, forces the conclusion that the evidence is insufficient to establish beyond a reasonable doubt that the defendant is guilty of the crime charged. Adding to this the non-admissible prejudicial evidence and the prejudicial effect the evidence may have had, leaves no alternative but to reverse the conviction. The judgment of conviction is reversed and the matter is remanded to the trial court with direction to enter a judgment of acquittal.[4]

ERICKSTAD, C.J., and PAULSON and VANDE WALLE, JJ., concur.

PEDERSON, Justice, dissenting.

I do not disagree with the statements of the law discussed by Justice Sand in the majority opinion. Until shown otherwise, I will presume that Judge Rothe also agrees and properly applied this law.

Perhaps the circumstantial evidence admitted and properly usable still is insufficient to satisfy Justice Sand of the guilt of Forsland, but Judge Rothe is entitled to deference on that point.

In addition, Judge Rothe must have known that a "game" was being played on the complaining witness. Many people who are ordinarily clean-shaven can make identification very difficult by adding a mustache. Games shouldn't be allowed to determine guilt or innocence of persons charged in our courts.

---

4. See *Tibbs v. Florida*, —— U.S. ——, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); *State v. McMor-row*, 286 N.W.2d 284 (N.D.1979).