1997 ND 170

**STATE of North Dakota, Plaintiff
and Appellee,**

v.

**Mark C. OSIER, Defendant
and Appellant.**

**Criminal No. 960346**

Supreme Court of North Dakota.

Sept. 8, 1997.

Rehearing Denied Sept. 30, 1997.

Constance Louise Cleveland (argued), Assistant State's Attorney, Fargo, for plaintiff and appellee.

Michael R. Hoffman appeared on behalf of Court–Appointed Counsel Mark A. Beauchene and moved for admission of Marc G. Kurzman (argued), of Kurzman, Grant & Ojala, Minneapolis, for defendant and appellant.

NEUMANN, Justice.

[¶ 1] Mark Osier appeals from a judgment of conviction for engaging in sexual contact with a minor under 15 years of age, in violation of Section 12.1–20–03, N.D.C.C. We hold the trial court's admission of evidence that Osier engaged in prior incidents of sexual misconduct with a minor constituted revers-

ible error, and we reverse the judgment of conviction and remand for a new trial.

[¶ 2] The State charged Osier with six separate counts of engaging in sexual intercourse with his daughter, between January and November 1994, when she was under 15 years of age. A jury found Osier guilty on all six counts, and the court sentenced Osier to serve 20 years at the penitentiary on count one and ten years, all suspended, on counts two through six, consecutive to count one. Osier appealed.

### Prior Bad Act Testimony

[¶ 3] Osier asserts the trial court committed reversible error by allowing Osier's niece to testify about prior incidents of Osier sexually fondling her. She testified, over Osier's objection, that when she was eight or nine years old Osier "put his hands up my shirt," "kissed me and stuck his tongue in my mouth" and, in another instance, took her from the room she was sleeping in at his home and touched her "between my legs" and then "took me upstairs into his bedroom" and then "had me feel his penis." The trial court admitted this evidence and instructed the jury it was for the limited purpose "of showing motive scheme or plan with respect to the offense charged."

[¶ 4] The admission of prior bad act evidence is governed by Rule 404(b), N.D.R.Ev.:

"*(b) Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. However, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall provide reasonable notice in advance of trial, or

during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

Under this rule, evidence of prior bad acts or crimes is generally not admissible "unless it is substantially relevant for some purpose other than to point out the defendant's criminal character and thus to show the probability that he acted in conformity therewith." *State v. Biby,* 366 N.W.2d 460, 463 (N.D. 1985). The rule acknowledges the inherent prejudicial effect prior bad act evidence may have on the trier of fact. *State v. Micko,* 393 N.W.2d 741, 744 (N.D.1986). The rule does not authorize automatic admission merely because the proponent advances a proper purpose for the evidence; instead, the relevance and probative value of the evidence must be demonstrated. *Dahlen v. Landis,* 314 N.W.2d 63, 70 (N.D.1981).

[¶ 5] The State invoked the entire litany of exceptions listed under Rule 404(b), N.D.R.Ev., for admitting the niece's testimony.[1] It failed, however, to specifically articulate how Osier's inappropriate sexual touching of his niece eight years prior to the alleged acts of intercourse with his daughter was relevant to any material issue or for any admissible purpose under Rule 404(b), N.D.R.Ev. We can glean no purpose for this evidence from the facts in this case other than to show that if Osier sexually assaulted a niece eight years ago to satisfy some lust, desire, or need for sexual contact with a young girl, then it is probable he satisfied the same lust, desire, or need eight years later by having intercourse with his minor daughter. That use of the niece's testimony is nothing more than propensity evidence to show Osier had a criminal sexual character and, in all probability, he acted in conformity therewith in committing the charged acts of

---

1. The State argues on appeal, this court should "adopt the standards adopted by the Federal Rules" which Congress enacted in 1994 for admitting prior bad act evidence in cases involving sexual assault or child molestation. Rule 414, Fed.R.Ev., provides in relevant part:

"(a) In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is

admissible, and may be considered for its bearing on any matter to which it is relevant." We decline the State's invitation to consider this rule. We have a formal process for adopting procedural rules, utilizing the Joint Procedure Committee, a standing committee of this court, chaired by Justice Dale V. Sandstrom. We do not adopt procedural rules by opinion in litigated appeals.

intercourse. Rule 404(b), N.D.R.Ev., prohibits such use of this evidence.

[¶ 6] In similar circumstances, we have warned of the dangers of opening the door to this type of propensity evidence and of tempting a jury to convict a defendant for his past actions rather than on evidence of the charged misconduct. *State v. Forsland,* 326 N.W.2d 688, 693 (N.D.1982); *State v. Flath,* 61 N.D. 342, 237 N.W. 792, 794 (1931); *see also State v. Micko,* 393 N.W.2d at 745; *State v. Stevens,* 238 N.W.2d 251, 258 (N.D. 1975), *overruled on other grounds, State v. Himmerick,* 499 N.W.2d 568, 572 (N.D.1993) [plea of not guilty in a criminal bench trial case preserves for appeal the issue of sufficiency of the evidence].

[¶ 7] Our decisions in *Forsland* and *Flath* are particularly relevant to the factual circumstances of this case and provide instructive guidance on the issue of the admissibility of the niece's testimony. The defendant in *Flath* was convicted for "taking indecent liberty" with a young boy. The defendant had been charged in two separate cases of committing similar acts with two other boys. At trial, those boys testified about the defendant's prior acts of sexual misconduct with them. We held admission of that testimony constituted reversible error, stating:

> "We are entirely at a loss to see any legal basis in this case for the admission of the evidence relating to the alleged other offenses. The real purpose for the introduction thereof seems to have been that stated by the prosecuting attorney, namely, to show 'the general licentious character of the defendant'; and it is settled beyond question that the state may not adduce evidence of other crimes for this purpose.
>
> " 'In a criminal case the prosecution may not introduce evidence tending to prove that the defendant was morally deficient, that he possessed a criminal disposition generally, or that he was particularly disposed to commit the offense with which he is charged, and, to this end, it may not introduce evidence of the defendant's participation in other acts which are criminal or which involve moral turpitude....'
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> "The acts committed upon one boy were in no sense part of the res gestae as regards the criminal conduct towards another. There is no question as to the identity of the person who committed the crime charged in this case. If the crime was committed, it was committed by the defendant and no one else. There is no question as to motive or intent; there is no claim and no basis for a claim that the particular criminal acts alleged to have been committed in this case might have been accidental or innocent. As was said by the Supreme Court of the state of Michigan, in a case involving a somewhat similar charge: 'The question of defendant's "motive, intent, the absence of, mistake or accident on his part" is clearly not involved in the charge as laid. Neither do we think that it can be said that in the commission of the crime charged he was acting in conformity with any "scheme" or "plan" theretofore formulated by him, or that proofs of similar acts with others in any way tend to inform the court or jury as to his "system" in doing the act complained of.' *People v. Dean,* 253 Mich. 434, 235 N.W. 211, 212....
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> "We are agreed that the trial court erred in admitting the evidence relating to the alleged criminal acts upon the two other boys."

*State v. Flath,* 237 N.W. at 793–794. Here, too, there is no permissible basis for admitting testimony about Osier's prior sexual misconduct. The State did not demonstrate an operative scheme or plan common to Osier's alleged sexual fondling of his niece and his charged acts of unlawful intercourse with his daughter to justify admitting the prior acts evidence.

[¶ 8] Admission of the niece's testimony to show motive, also cannot withstand scrutiny under Rule 404(b), N.D.R.Ev. To say that Osier's sexual fondling of his niece is probative of his motive eight years later in having sexual intercourse with his daughter is nothing more than a veiled offer of propensity evidence. Candidly stated, the only relevance of the niece's testimony to motive is to

demonstrate Osier presumably had an unseemly motive (*e.g.*, improper lust, desire, or need) for sexually assaulting his niece and therefore he presumably must also have acted with the same motive in committing the charged acts of intercourse with his daughter. That is precisely the use of prior bad act testimony prohibited by this court in *Flath* and again rejected by this court in *State v. Forsland.*

[¶ 9] The defendant in *Forsland* was convicted of indecent exposure and sexual assault. After the victim completed her night shift at a Fargo hospital, she crossed the street from the hospital and entered a parking ramp where her car was parked. As she opened the car door, a man reached into the car, grabbed her in the crotch area, and exposed himself. At trial, the prosecution introduced evidence that two months prior to the charged incident the defendant exposed himself at the same parking ramp. This court held the evidence was inadmissible under Rule 404(b), N.D.R.Ev., and, citing approvingly to an Iowa Law Review article, cautioned about the dangers underlying the trend of allowing prior crime evidence in sexual assault cases:

"In volume 41, Iowa Law Review (1956), page 333, entitled *Other Vices, Other Crimes,* the use or non-use of prior offenses is discussed, and the author makes some interesting statements:

" '[The] possibility is high that the jury will convict on the basis of character alone, and prejudice dictates the decisions of the triers of fact.

" 'Yet courts have lost all feeling for tradition and the meaning of prejudice when applying rules of exclusion in prosecutions for sex offenses. A strong line of authorities today holds that evidence of other crimes is admissible for the purpose of showing a degenerate disposition, a lustful disposition, or an inclination to commit sexual offenses.'

"The cases relied upon by the author are not all of recent vintage. The article continues:

" 'When deciding the issue of guilt or innocence in sex cases, where prejudice has reached its loftiest peak, our courts

have been most liberal in announcing and fostering a nebulous exception, offering scant attention to inherent possibilities of prejudice. Just when protection is most needed, the rules collapse.'

\* \* \* \* \* \*

"[W]e conclude that the evidence pertaining to the admission of the defendant's prior plea of guilty on a similar offense could not be used in determining whether or not the defendant was guilty or innocent of the crime charged."

*State v. Forsland,* 326 N.W.2d at 693.

[¶ 10] Our analysis and conclusions in *Flath* and *Forsland* are determinative here. There is no permissible basis under the circumstances of this case for admitting the niece's testimony under Rule 404(b), N.D.R.Ev. Her testimony was not relevant to a genuine issue regarding motive, scheme, plan, or any other listed exception under Rule 404(b), N.D.R.Ev. The sole purpose served by her testimony was to demonstrate Osier's criminal sexual character to show he probably acted in conformity with that character in committing the acts charged. As this court stated in *State v. Stevens,* 238 N.W.2d 251, 257 (N.D.1975), "in the final analysis, the question before the court, trial or appellate, is one of balancing the aims of full disclosure and fairness to the defendant where they are in conflict. The basic question is fundamental fairness." It is fundamentally unfair to tempt a jury to convict a defendant circumstantially on the basis of prior misconduct or character propensity rather than upon evidence of the criminal acts charged. We conclude the trial court erred in admitting the niece's testimony.

### Harmless Error Review

[¶ 11] Our review of trial court error is guided by Rule 52(a), N.D.R.Crim.P.:

"*(a) Harmless Error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

Trial court error which does not prejudice substantial rights of the accused may be disregarded. *State v. Micko,* 393 N.W.2d at 746. [¶ 12] Osier's daughter testified that on

numerous occasions during 1994, when she was 13 or 14 years old, her father forced her to have sexual intercourse with him when her mother was away on business trips. Dr. Ron Miller, a pediatric physician practicing in Fargo, examined Osier's daughter. He concluded she has had sexual intercourse on multiple occasions. There was evidence a young man and acquaintance of Osier's daughter had one incident of intercourse with her, but Dr. Miller testified a single act of intercourse would not, in his opinion, have caused her physical condition. Osier's niece then testified Osier sexually molested her on several occasions when she was eight or nine years old.

[¶ 13] Although corroborated by Dr. Miller's testimony, the primary evidence against Osier is his daughter's testimony, and her credibility is therefore crucial to the State's case. Under these circumstances, the niece's testimony about Osier sexually molesting her is highly prejudicial and could have affected the jury's determination. The jury could have decided to believe the daughter's assertion Osier molested her because Osier previously molested his niece. In this regard, the admission of Osier's prior conduct of molesting his niece is similar to the admission of prior crime evidence in *State v. Forsland*, 326 N.W.2d at 694, which this court held to be reversible error. *See also State v. Ferguson*, 391 N.W.2d 172, 175 (N.D. 1986) (admission of prior conviction of gross sexual imposition in defendant's trial for terrorizing necessitated reversal and remand for new trial because of "the possible prejudice resulting from admission of this highly prejudicial evidence"). After reviewing the record in this case, we conclude the jury may have reached a different decision absent the erroneous admission of the niece's prior bad conduct testimony.

[¶ 14] Other issues raised by Osier need not be addressed, because they are not necessary to disposition of this appeal and do not involve matters likely to recur during the retrial. Questions, the answers to which are not necessary to the determination of an appeal, need not be considered. *City of Fargo v. Ness*, 529 N.W.2d 572, 577 (N.D.1995).

[¶ 15] The judgment of conviction is reversed and the case is remanded for a new trial.

[¶ 16] VANDE WALLE,C.J., and MARING and MESCHKE, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 17] Because the trial court correctly applied the law of this state, I would affirm.

### I

[¶ 18] In reviewing the decision of the trial court:

> "We review a trial court's evidentiary rulings under an abuse of discretion standard. *Knudson v. Director, North Dakota Dept. of Transportation*, 530 N.W.2d 313, 316 (N.D.1995); *Crowston v. Goodyear Tire & Rubber Co.*, 521 N.W.2d 401, 412 (N.D.1994). A trial court abuses its discretion when it acts in an arbitrary or capricious manner, or misapplies or misinterprets the law. *Filler v. Bragg*, 1997 ND 24, ¶ 9, 559 N.W.2d 225; *Weber v. Weber*, 548 N.W.2d 781, 783 (N.D.1996). We apply this deferential standard of review to provide the trial courts with greater control in the admissibility of evidence. *Knudson*, 530 N.W.2d at 316."

*State v. Christensen*, 1997 ND 57, ¶ 5, 561 N.W.2d 631. In light of this deferential standard of review, we look at the entire record to determine the context of the trial court's decision. *State v. Stevens*, 238 N.W.2d 251, 258 (N.D.1975), *overruled in part, on other grounds, by State v. Himmerick*, 499 N.W.2d 568, 572 (N.D.1993); *cf. State v. Saavedra*, 406 N.W.2d 667, 673 (N.D.1987). If the trial court did not abuse its discretion in permitting Osier's niece to testify, we must affirm the trial court's decision. *Williston Farm Equipment, Inc. v. Steiger Tractor, Inc.*, 504 N.W.2d 545, 548–49 (N.D.1993).

### II

[¶ 19] The majority opinion does not fully enunciate the record upon which the trial court's decision was based.

[¶ 20] Mark Osier was charged with six counts of gross sexual imposition involving his daughter. Prior to trial, Osier moved to

bar the testimony of two witnesses who would present evidence under N.D.R.Ev. 404(b). In his opinion, Judge Ralph Erickson, the judge for Osier's first trial, ruled on the admissibility of the testimony of the two witnesses, one of whom was Osier's niece. Judge Erickson permitted Osier's niece to testify, but did not allow the other witness—a family friend allegedly abused as a teenager by Osier—to testify. Memorandum Opinion On Rule 404(b) Motion at 7 (Memorandum Opinion).

[¶ 21] Osier's first trial ended in a hung jury. The case was set for a second trial before Judge Norman Backes. Prior to the second trial, Osier moved in limine to bar the testimony of the family friend "as per the order of the Honorable Ralph Erickson" and to bar "the testimony of [Osier's niece] in the State's case in chief upon the grounds that the conditions precedent established under the North Dakota rules and *State v. Stevens*, 238 N.W.2d 251 (N.D.1975) have not been met." Judge Backes stated he was not bound by the decisions in the first trial, but did rule Judge Erickson's decision regarding the 404(b) testimony "will stand."

[¶ 22] When the State attempted to call Osier's niece, Osier's counsel objected. The jury was excused while Judge Backes heard counsels' arguments. The State argued the four-pronged *Stevens* test had been met and the evidence was "highly probative to show motive, opportunity, intent, preparation, plan, and specifically absence of mistake. This is especially true because of the defense that has been raised." The State emphasized the defense had "articulated explicitly . . . the Defense [sic] is one of fabrication. . . ." Osier argued the *Stevens* requirements had not been met.

[¶ 23] In deciding to allow the prior bad act testimony, Judge Backes specifically found the evidence was sufficient to find Osier guilty beyond a reasonable doubt and, because of the potential for prejudice, cautioned the State to "go to exactly and only the prior

activity or the prior bad—bad acts." Judge Backes further explained "my ruling as to 404(b)—what I am doing in essence is reaffirming the findings of Judge Erickson. I have reviewed those findings and find them to be correct, and I am accepting Judge Erickson's Order as my own." Osier's niece subsequently testified. Before releasing the jury for deliberations, Judge Backes instructed the jury regarding the prior bad act evidence.[2] Osier was found guilty on all six counts.

### III

[¶ 24] In *State v. Flath*, 61 N.D. 342, 237 N.W. 792, 794 (1931) (quoting *People v. Dean*, 253 Mich. 434, 235 N.W. 211, 212 (1931)), this Court reversed a trial court's decision permitting the use of prior bad act evidence, stating:

"'The question of defendant's "motive, intent, the absence of, mistake or accident on his part" is clearly not involved in the charge as laid. Neither do we think that it can be said that in the commission of the crime charged he was acting in conformity with any "scheme" or "plan" theretofore formulated by him, or that proofs of similar acts with others in any way tend to inform the court or jury as to his "system" in doing the act complained of.'"

The decision in *Flath* did not, however, foreclose the use of prior bad acts to show "motive," "scheme," "plan," or "system." *See State v. Stevens*, 238 N.W.2d 251, 257 (N.D. 1975) (noting "the exception to the rule is part of the law of this State"), *overruled in part, on other grounds, by State v. Himmerick*, 499 N.W.2d 568, 572 (N.D.1993).

[¶ 25] The exception discussed in *Flath* has since been codified as N.D.R.Ev. 404(b), which states in part:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. However, it may be admissible for other purposes, such as

---

2. The instruction read:

**"RELATED ACTS OR OFFENSES**

"For the purpose of showing motive scheme or plan with respect to the offense charged, the court received evidence of other acts or offenses

committed by the Defendant. Before considering evidence of other acts or offenses for this purpose, you must first find beyond a reasonable doubt that the Defendant committed the acts constituting the offense charged."

proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

This Court has:

"enunciated criteria to be considered whenever subdivision (b) of Rule 404, N.D.R.Ev., is invoked. A stricter showing of relevancy is required to prove identity or the doing of the criminal act by the accused than when it is offered to prove knowledge, intent, or state of mind. There must be clear and convincing evidence of prior similar acts. Evidence of prior wrongs may not be considered unless proof exists of commission of the crime charged. Finally, the court must balance the aims of full disclosure and fairness to the defendant when they are in conflict."

*State v. Phelps*, 297 N.W.2d 769, 772–73 (N.D.1980) (citing *Stevens* ); *see also State v. Christensen*, 1997 ND 57, ¶ 7, 561 N.W.2d 631 (setting forth a similar analysis).

[¶ 26] The admissibility of prior bad act evidence turns on the application of the facts to this framework, giving due consideration to the decision of the trial court. Under the proper factual situations, a trial court does not abuse its discretion by admitting prior bad acts to show common plan, scheme, or motive.

[¶ 27] In *State v. Ondricek*, 535 N.W.2d 872, 873 (S.D.1995), the South Dakota Supreme Court, in a case similar to this, affirmed the admission of prior acts as evidence of intent and common plan or scheme, based on an abuse of discretion standard. South Dakota applies a two-part test to its codification of F.R.Ev. 404(b), S.D.C.L. § 19–12–5, which considers:

"1. Whether the intended purpose for offering the other acts evidence is relevant to some material issue in the case (factual inquiry), and

"2. Whether the probative value of the evidence is substantially outweighed by its prejudicial effect (legal inquiry)."

*Ondricek* at 873.

[¶ 28] In *Ondricek*, Myron Ondricek was charged with the sexual contact and rape of two of his nieces. Those nieces testified about the incidents, and the trial court also permitted two other nieces to testify about prior bad acts allegedly committed upon them by Ondricek. Ondricek was convicted on one count of sexual contact with a minor. The South Dakota Supreme Court held "a comparison between the other acts evidence and the crimes charged clearly demonstrates Ondricek's common plan or scheme to use family and recreational activities to prey on his young nieces." *Ondricek* at 876. The Court noted:

"Most of the charged and uncharged acts took place during fishing, swimming, and camping trips which were initiated by Ondricek, or during his nieces' overnight visits at his home. During recreational excursions, Ondricek was typically alone with his victim, or accompanied by younger children who were unlikely to understand or report his sexual predation. During his nieces' overnight stays, he arranged to be alone with them by telling bedtime stories or offering to help them with their bath. In other words, Ondricek consistently used these family visits and recreational activities as a means to get his young nieces alone and sexually abuse them. The pattern established over the years by Ondricek is, in all material respects, indistinguishable from the common scheme of sexual predation found in *Perkins* and *Christopherson*. The trial court properly admitted other acts evidence to show this common scheme."

*Ondricek* at 876–77.

[¶ 29] In *Ondricek*, the South Dakota Supreme Court quoted extensively from *Perkins* and *Christopherson*, where it had also found common plans or schemes. In *Christopherson* it held:

" 'The bad act testimony in this case was admissible to prove a plan or a common scheme to develop situations which allowed Christopherson to have sexual contact with young boys. First he would pick out an impressionable boy in his early teens. Christopherson always picked boys whose parents he knew or could get friendly with, making it more difficult for the boy to confide with his parents. Christopherson then used his role as an authority figure

(teacher, supervisor or family friend) to work the boy into a situation where Christopherson was alone with him and able to have sexual contact. In each case Christopherson would tell the boy to keep it a secret. Christopherson would play off the desires or insecurities of the boy by promising a car, praying to God for forgiveness, or promising to get the boy out of special education. Christopherson never asked any of the boys to do anything to him.' "

*Ondricek* at 875 (quoting *State v. Christopherson*, 482 N.W.2d 298, 301 (S.D.1992)).

[¶ 30] In *Perkins*, the South Dakota Supreme Court also permitted evidence of prior acts, stating:

" 'The challenged testimony demonstrates a consistent pattern of molesting young girls with whom Perkins was long acquainted, when they were within his home. In each instance, Perkins approached the victim, and began fondling their breasts. Between the charges stemming from the D.J.K. incidents, and the four acts involving the other girls, a total of seven sexual encounters were presented. In four of the seven, the victim was present in the home as a baby-sitter staying overnight. In a fifth ... the victim was spending the night after staying late to help Perkins' wife with a new baby, i.e. babysitting. Although Perkins asserts that the incidents involving [the other girls] were so different as to be irrelevant, the factual patterns are remarkably similar. The only real difference between the bad acts and the rape incidents is that D.J.K. made no physical act to stop Perkins, whereas [the other girls] did. Circumstances which surrounded the various acts and Perkins' behavior up to the point of physical resistance (which D.J.K. did not offer) are virtually the same.' "

*Ondricek* at 875–76 (quoting *State v. Perkins*, 444 N.W.2d 34, 38 (S.D.1989)).

[¶ 31] In admitting prior acts as evidence of motive, the Wisconsin Supreme Court held, when "the purpose of the sexual contact is an element of the crime, and because the defendant's motive impacts upon his purpose for committing the crime with which he is charged, other-acts evidence which tends to show [the defendant's] motive is properly admissible." *State v. Fishnick*, 127 Wis.2d 247, 378 N.W.2d 272, 279 (1985); *see also State v. Plymesser*, 172 Wis.2d 583, 493 N.W.2d 367, 372–74 (1992); *State v. Friedrich*, 135 Wis.2d 1, 398 N.W.2d 763, 772 (1987). When "a motive in an earlier crime is used to show a common cause for both the earlier and a later crime," it is not being used to show acting in conformity with, but rather to show "[t]he same motive caused both the prior act and the charged act." *Plymesser* at 372.

[¶ 32] In this case, the motivation for Osier's interaction with his daughter was arguably the satisfaction of his sexual desires, and his interactions with his niece were also arguably motivated by the satisfaction of his sexual desires. *Compare Fishnick* at 279. Whether Osier acted with the purpose of satisfying his sexual desires is an element of gross sexual imposition, N.D.C.C. § 12.1–20–03. N.D.C.C. § 12.1–20–02(3) defines a sexual act as:

"sexual contact between human beings consisting of contact between the penis and the vulva, the penis and the anus, the mouth and the penis, the mouth and the vulva, or any other portion of the human body and the penis, anus, or vulva; or the use of an object which comes in contact with the victim's anus, vulva, or penis. For the purposes of this subsection, sexual contact between the penis and the vulva, the penis and the anus, any other portion of the human body and the anus or vulva, or an object and the anus, vulva, or penis of the victim, occurs upon penetration, however slight. Emission is not required."

Sexual contact, as referred to in N.D.C.C. § 12.1–20–02(3), is defined in N.D.C.C. § 12.1–20–02(4), as "any touching of the sexual or other intimate parts of the person *for the purpose of arousing or satisfying sexual or aggressive desires*" (emphasis added). *See State v. Vance*, 537 N.W.2d 545, 548 (N.D.1995) ("Therefore, section 12.1–20–03(2)(a), NDCC, which prohibits 'sexual contact' is necessarily a lesser included offense of section 12.1–20–03(1)(d), NDCC, which prohibits a 'sexual act.' "). Thus motive was clearly relevant to an element of the offense charged, a necessary subject of proof.

## IV

[¶ 33] Judge Erickson's opinion, as adopted by Judge Backes, carefully analyzed both the law and the four-pronged test in *Stevens*. *See State v. Micko*, 393 N.W.2d 741, 745 (N.D.1986) (concluding the trial court improperly admitted prior bad act evidence where the trial court failed to use the proper analysis); *compare Ondricek* at 877 (finding trial court applied test for admission of other acts evidence).

[¶ 34] *Stevens* requires a stricter showing of relevance. *Stevens* at 257. While not all prior acts are admissible under this test, Rule 404(b) does allow evidence of prior bad acts when there is evidence of "a 'pattern' of crimes exhibiting 'striking similarities' of method." James Joseph Duane, *The New Federal Rules of Evidence on Prior Acts of Accused Sex Offenders: A Poorly Drafted Version of A Very Bad Idea*, 157 F.R.D. 95, 98 (1994). This rule applies equally to cases involving prior acts of child sexual abuse when the record supports this determination. *See Ondricek; see also, e.g., State v. Moorman*, 505 N.W.2d 593 (Minn.1993); *State v. Shamp*, 422 N.W.2d 520 (Minn.Ct.App.1988); *Plymesser* at 374.

[¶ 35] "Striking similarities" is also the language used by Judge Erickson in his opinion and adopted by Judge Backes. Judge Erickson found:

> "In reviewing the testimony of [Osier's niece], there are striking similarities between the testimony of the witness and the complaining victim. [Osier's niece] testified that she was told by the defendant not to tell anyone 'because Leona would be jealous and your mother wouldn't think you would be old enough.' [Osier's daughter] relates that she was told by her father not to tell anyone because her mother (Leona) would be jealous. Both [Osier's niece and his daughter] describe the use of 'dirty pictures.' Both also relate that Mr. Osier asserted that he was giving them advice during the incidents (to [his niece]: 'This is when you should say no.' to [his daughter]: 'I would like to be the one to teach you.').
>
> "These similarities are highly probative in that they go to show 'motive, opportuni-

ty, intent, preparation, plan ... or absence of mistake or accident.' *See,* Rule 404(b) N.D. Rules Evid. (1995). This evidence is especially probative because the defense appears to be at this time to be one of fabrication by [Osier's daughter]. Under these circumstances, the probative value of the evidence outweighs any unfair prejudice that might arise out of the admission of the evidence."

Memorandum Opinion at 5.

[¶ 36] The majority says, "The State did not demonstrate an operative scheme or plan common to Osier's alleged sexual fondling of his niece and his charged acts of unlawful intercourse with his daughter to justify admitting the prior acts evidence." This would appear to be the correct result based upon the facts recited in the majority opinion at ¶ 3:

> "She testified, over Osier's objection, that when she was eight or nine years old Osier 'put his hands up my shirt,' 'kissed me and stuck his tongue in my mouth' and, in another instance, took her from the room she was sleeping in at his home and touched her 'between my legs' and then 'took me upstairs into his bedroom' and then 'had me feel his penis.'"

The majority opinion, however, does not consider the testimony discussed and considered by Judge Erickson in his opinion, which supports a finding of a common plan or scheme. The testimony of Osier's daughter and his niece at the second trial before Judge Backes was similar to the testimony before Judge Erickson. *See* Trans. at 88, 94, 102, 357, 358, 360.

[¶ 37] The majority also dismisses the trial court's admission of Osier's niece's testimony to show motive, stating at ¶ 8: "That is precisely the use of prior bad act testimony prohibited by this court in *Flath* and again rejected by this court in *State v. Forsland*." However, nowhere in *State v. Forsland*, 326 N.W.2d 688 (N.D.1982), did this Court discuss whether prior bad acts, specifically, prior sexual abuse, might fit the motive exception to N.D.R.Ev. 404(b). Justice VandeWalle, concurring in the result in

*State v. Ferguson,* 391 N.W.2d 172, 178 (N.D.1986), explained:

> "*Forsland* did not hold, as a matter of law, that there was no appropriate purpose for which the prior conviction evidence could serve as proof and that its only effect was to demonstrate criminal character or propensity. Rather, it was the use of the previous conviction under the particular facts of that case where the complaining witness could not identify the defendant, which the *Forsland* court found could not be used in determining whether or not the defendant was guilty or innocent of the crime charged.

> "It is clear that the evidence of the previous conviction may be admissible for such purpose as proof of preparation and plan.... However, the statement of the trial judge as recited in the majority opinion leads me to the conclusion that the wide discretion vested in the trial judge by Rule 403 was not exercised in this instance."

[¶ 38] The Wisconsin Supreme Court's decisions in *Fishnick, Friedrich,* and *Plymesser,* holding prior acts of sexual abuse committed upon third parties admissible to show motive, apply in this case. *See also Pavlacka v. State,* 892 S.W.2d 897, 903–05 (Tex.Crim. App.1994) (Campbell, J., dissenting); *Hernandez v. State,* 900 S.W.2d 835 (Tex.App. 1995, no writ).

[¶ 39] Judge Backes also met the *Stevens* requirement the court balance "the aims of full disclosure and fairness to the defendant." *Stevens* at 257. At the second trial, Judges Backes did not rule on the admissibility of the prior act evidence until all of the other testimony in the case had been heard and the State had called all its other witnesses. Judge Backes then considered the prejudicial value of the testimony and ordered the State to proceed immediately to the testimony of the bad acts to prevent the testimony from being unduly prejudicial. *See Micko* at 745, 745 n. 2. Osier contends the remoteness of the prior acts with his niece is "prejudicial"; however, the South Dakota Supreme Court in *Ondricek* and *Christopherson* held incidents occurring nearly twenty years previous were not too remote, considering the nature of the acts. *See Ondricek* at 877. Their analysis applies here—where the events were substantially more recent.

[¶ 40] Furthermore, in its closing argument, the State emphasized the limited purpose for which it was using the evidence of prior bad acts:

> "Ladies and gentlemen, that is enough to convict Mark Osier, but there is one other thing that the State chooses to introduce and the one other thing you can only use for a limited purpose. That is the testimony of [Osier's niece]. She testified that her Uncle Mark molested her when she was about 8 or 9 years old. And while he—during the times that he did that, he showed her magazines. And if you remember she—[Osier's daughter] said he showed her a pornographic film described as pornographic. [Osier's niece] testified about the magazine not National Geographic but called Jugs. He told [his niece] not to tell Leona. He told her he wanted to instruct her. What was he telling [his daughter]? I would like to be the one so you don't get in trouble with someone else. Those are the purposes that the State introduced that evidence."

In *Stevens* at 258, this Court stated, "We regret that the arguments of counsel were not reported and transcribed, so that we could examine the arguments of counsel to see what use was made in argument of evidence which we hold inadmissible." In this case, the State's closing argument, while not wholly articulate, evidences its intent to use the testimony for proper 404(b) purposes, and is distinguishable from the argument made by the State in *Flath,* that prior act evidence should be admitted "for the purpose of showing the general licentious character." *Flath* at 792–93.

[¶ 41] The requirement of *Stevens* that "before such evidence may be considered at all, there must be proof of commission of the crime charged" was also met. *Stevens* at 257. Prior to allowing the testimony, Judge Backes determined "a juror might find the Defendant guilty beyond a reasonable doubt under the evidence that has been at this point submitted." After the close of testimony, Judge Backes concluded the trial by giv-

ing an instruction similar to that cited and discussed in *Stevens, Forsland,* and *Micko. See supra* note 2 (setting forth instruction given by the trial court); *Micko* at 744; *Forsland* at 691; *Stevens* at 257. In *Micko,* this Court held the *Stevens* requirement of proof of the crime charged is satisfied by such a cautionary instruction. *Micko* at 744.

[¶ 42] The majority holds, at ¶ 10, *Flath* and its progeny are determinative of this case. However, application of the law in *Flath* and its progeny to the facts of this case shows the trial court reached the correct conclusion. The trial court properly analyzed the admission of the prior act evidence against its prejudicial value, and the record shows the evidence was properly used under Rule 404(b). I would hold Judge Backes' decision to permit the evidence in the second trial was not an abuse of discretion, and I would affirm.

[¶ 43] Dale V. Sandstrom